UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
WDNC Civil Action No. 3:24-cv-00006

LM INSURANCE CORPORATION,

    Plaintiff,

v.

DAVID SIMONINI CUSTOM HOME, INC.;

    Defendants.

**COMPLAINT**

NOW COMES, Plaintiff LM Insurance Corporation, by and through its attorneys, and complaining against the Defendant David Simonini Custom Home, Inc., ("Defendant") alleging as follows:

1. Plaintiff LM Insurance Corporation ("Plaintiff" or "LMIC") is a corporation organized and existing under the laws of the State of Illinois. LMIC is a wholly owned subsidiary of Liberty Mutual Group, Inc. ("LMG"), which is a company organized and existing under the laws of the Commonwealth of Massachusetts.

2. Defendant David Simonini Custom Home, Inc., is a corporation organized under the laws of the State of North Carolina and has its principal place of business in Mecklenburg County, North Carolina.

**JURISDICTION AND VENUE**

3. This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1331(a) based on diversity of citizenship between the parties and an amount in controversy greater

than $75,000.00.

4. This cause of action also arises under the common law of the State of North Carolina. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

5. Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred within this district.

## FACTUAL BACKGROUND

### NC Workers Compensation Insurance Plan

6. In North Carolina, virtually all employers (with exceptions that are not relevant here) are required to maintain workers' compensation insurance coverage pursuant to N.C. Gen. Stat. § 97-1, *et seq*. Some companies are not able to obtain workers' compensation insurance coverage in the voluntary market. When an employer in North Carolina is unable to obtain workers' compensation insurance coverage via the voluntary market, the employer may apply for coverage under the North Carolina Workers Compensation Insurance Plan (the "NC Plan"), which is an assigned-risk insurance marketplace.

7. During the time period relevant to this case, Plaintiff was a servicing carrier authorized to issue policies and to provide insurance services to employers seeking workers' compensation insurance coverage through the NC Plan.

8. In order to apply for coverage under the NC Plan, an employer must submit a written application to the administrator of the NC Plan and pay an estimated premium deposit based primarily upon information known (at that time) only by the employer.

9. The standard application form to obtain insurance under the NC Plan must be completed by the applying employer. That application requires:

      a. Complete underwriting information and reasonable payroll estimates;

b. A statement that the employer will maintain complete records of payroll transactions in such form as the insurance company may reasonably require, and that such records will be made available to the insurance company by the employer upon request;

c. A statement that the employer will comply with all reasonable recommendations of the insurance company relating to the welfare, health and safety of employees; and

d. Payment of the appropriate deposit premium.

10. Upon receipt of the application and premium deposit, the NC Plan Administrator issues a written insurance binder to the employer and randomly designates an insurance carrier to issue the policy.

11. The designated carrier then issues a policy of workers' compensation insurance in its own name to the employer.

12. Because the employer's actual premium must match the risk being insured by the insurance carrier over the relevant time period, the estimated premium stated on the application provided to the NC Plan is subject to audit, as stated in the binder and in the policy itself, and it is subject to subsequent revision by the insurance carrier to which the employer has been randomly assigned.

Defendant's Policies

13. Upon information and belief, Defendant operates a residential building business and provides services in several counties in North Carolina where Defendant builds and constructs new residential homes.

14. On February 23, 2021, Defendant Siminoni Custom Home, Inc., was assigned workers' compensation insurance coverage through the NC Plan.

15. The NC Plan designated Plaintiff to be the issuing carrier for Defendant's insurance coverage.

16. Defendant's coverage was placed with LMIC and the policy had an effective date of February 24, 2021.

17. This was Defendant's first policy with Plaintiff, and the policy number was WC5-33S-B1Z776-011 (hereinafter "Policy # 1").

18. Policy # 1 was in effect from February 24, 2021, through February 24, 2022.

19. At or near the end of the effective dates of Policy # 1, Defendant renewed its workers' compensation insurance coverage with LMIC. The renewed policy had a policy number of WC5-33S-B1Z776-012 and was to be in effect from February 24, 2022, through February 24, 2023 (hereinafter "Policy # 2").

Necessary Audits

20. As part of the NC Workers Compensation Insurance Plan, Plaintiff must complete audits to ensure that the correct premiums were charged and collected from an insured.

21. Premiums are based on potential exposure during the policy periods.

22. An insurer relies on information related to a company's employees and paid wages to determine the appropriate premium to charge the company for the applicable insurance coverage.

23. Upon expiration or cancellation of a policy, workers' compensation insurance carriers typically perform an audit in order to determine the final premium.

24. The final earned premium is based upon the incurred or actual payroll for the policy period, the classifications of employees, classification rates, and the insured's experience modification, among other factors.

25. Insureds such as the Defendant are required to keep and provide records when requested

pursuant to section 5G of Plaintiff's insurance policy.

26. Specifically, Part 5, Section G of Plaintiff's policy contains the following language pertaining to audits:

> G. **Audit**
>
> You will let us examine and audit all your records that relate to this policy. These records include ledgers, journals, registers, vouchers, contracts, tax reports, payroll and disbursement records, and programs for storing and retrieving data. We may conduct the audit during regular business hours during the policy period and within three years after the policy period ends. Information developed by audit will be used to determine final premium. Insurance rate service organizations have the same rights we have under this provision.

27. Plaintiff's policy also contains the following language under the title of "Audit Noncompliance Charge of Endorsement:"

> Part Five—Premium, Section G. (Audit) of the Workers Compensation and Employers Liability Insurance Policy is revised by adding the following:
>
> If you do not allow us to examine and audit all of your records that relate to this policy, and/or do not provide audit information as requested, we may apply an Audit Noncompliance Charge. The method for determining the Audit Noncompliance Charge by state, where applicable, is shown in the Schedule below.
>
> If you allow us to examine and audit all of your records after we have applied an Audit Noncompliance Charge, we will revise your premium in accordance with our manuals and Part 5—Premium, E. (Final Premium) of this policy.
>
> Failure to cooperate with this policy provision may result in the cancellation of your insurance coverage, as specified under the policy.
>
> Note:
> For coverage under state-approved workers compensation assigned risk plans, failure to cooperate with this policy provision may affect your eligibility for coverage.

Audit of Defendant

28. In January of 2022, Plaintiff engaged with RLD Associates Incorporated ("RLD") to conduct an audit of Defendant's Policy # 1.

29. After receiving the assignment from Plaintiff, RLD contacted Defendant requesting an audit of Policy # 1 with Defendant.

30. Upon information and belief, in response to RLD's inquiry, Defendant requested a virtual audit instead of an in-person audit.

31. On March 23, 2022, LMIC received a communication from the Defendant's insurance agent stating that the name of the business should be "David Simonini Custom Home LLC," instead of "David Simonini Custom Home Inc."

32. When Plaintiff asked the agent the reasoning behind this change, Defendant's insurance agent stated that Plaintiff had made a mistake.

33. On or about March 26, 2022, and on or about April 1, 2022, RLD contacted Defendant requesting additional documentation to complete the audit.

34. In response to RLD's request, Defendant only provided a limited amount of the information RLD had requested.

35. When Plaintiff and RLD attempted to communicate with Defendant and obtain the missing but necessary information to complete the audit, Defendant became uncooperative and refused to provide the requested records and documents.

36. On or about April 21, 2022, Plaintiff informed Defendant that Policy #1 was being closed due to Defendant's non-compliance with the audit requests.

37. Plaintiff canceled Policy # 2 for non-compliance on or about May 10, 2022, because of Defendant's failure to provide the requested records and documents.

38. On or about May 13, 2022, Plaintiff assigned a cancellation audit of Policy # 2 to RLD.

39. Defendant requested a revision of the initial audit of Policy # 1 and a new auditor, and Plaintiff granted Defendant's request.

40. On or about May 24, 2022, Plaintiff opened a revision of the audit of Policy # 1, and Plaintiff assigned the revision audit to RLD.

41. Defendant continued to refuse to comply with requests for information related to the revision audit of Policy # 1.

42. For example, Plaintiff requested information from Defendant about a particular set of payments. Instead of properly responding pursuant to the policy language requiring compliance, Defendant stated that the payments were personal payments and refused to provide receipts or documentation showing who was paid.

43. On or about November 4, 2022, Defendant asked for a resolution to pending issues with Policy # 1 before it would complete the audit of Policy # 2.

44. On or about December 8, 2022, Plaintiff informed Defendant that the final policy premium for Policy # 2 had been closed out, because Defendant failed to provide the necessary documentation for Plaintiff to be able to calculate Defendant's correct premium.

45. On or about January 3, 2023, Plaintiff closed the revision audit of Policy # 1 due to Defendant's non-compliance and sent Defendant a letter illustrating an updated audit exposure list. The letter informed Defendant that Policy # 1 had expired on February 24, 2022.

Post Audit Premium Determinations

46. After auditing Defendant with regard to Policy # 1, Plaintiff determined that additional premiums in the amount of $274,931.00 were owed.

47. After auditing Defendant with regard to Policy # 2, Plaintiff determined that additional premiums in the amount of $61,354.00 were owed.

48. Defendant owes Plaintiff the total amount of $336,285.00 in additional premiums for the workers' compensation insurance coverage provided by Policies # 1 and # 2.

49. Defendant was aware of its obligations to cooperate with Plaintiff under Policy # 1 and Policy # 2.

50. Despite these contractual obligations, Defendant willfully refused to cooperate with Plaintiff in the conducting of the necessary audits.

## FIRST CAUSE OF ACTION - BREACH OF CONTRACT

51. The preceding paragraphs are re-alleged and incorporated by reference as if fully rewritten herein.

52. Plaintiff offered workers' compensation insurance coverage to Defendant.

53. Plaintiff's offer was based upon information from Defendant that Plaintiff believed was accurate.

54. Defendant accepted Plaintiff's offer to provide workers' compensation insurance to Defendant by accepting the terms of the Policy and paying the premiums.

55. Plaintiff provided workers compensation insurance coverage to Defendant during the policy periods for Policy # 1 and Policy # 2.

56. Policy # 1 and Policy # 2 each placed a binding duty, codified in Part 5, Section G, upon Defendant that required Defendant to provide certain information to Plaintiff upon demand.

57. Policy # 1 and Policy # 2 each placed a binding duty, codified under the Section entitled "Audit Noncompliance Charge of Endorsement," upon Defendant to comply with, *inter alia*, the provisions requiring Defendant to provide information to Plaintiff upon request.

58. Policy # 1 and Policy # 2 each provided for termination of the contract and cancelation of the Policy if Defendant did not comply with the terms of the Policy.

59. Policy # 1 and Policy # 2 each included a Section entitled "Assigned Risk Loss Sensitive Rating Plan Notification Endorsement" that required Defendant to allow Plaintiff "reasonable access to your facilities or files and records for audit or inspection."

60. Defendant breached the contract by its failure to provide Plaintiff with requested information in connection with Plaintiff's audits.

61. Defendant breached the contract by its failure to provide Plaintiff with reasonable access to its files and records for audit or inspection purposes.

62. Defendant breached each of its insurance contracts (Policy # 1 and Policy # 2) with Plaintiff by doing one or more of the following:

    a. Improperly reporting wages paid during audits;

    b. Failing to provide tax returns;

    c. Failing to provide complete and accurate audit information to Plaintiff;

    d. Failing to cooperate with Plaintiff's auditors; and

    e. In other ways that will be proven in this lawsuit.

63. As a direct and proximate result of Defendant's breach of contract, Plaintiff has been damaged in excess of $75,000.00 (SEVENTY-FIVE THOUSAND DOLLARS).

64. Plaintiff is entitled to recover its damages suffered as a result of Defendant's breach of contract from Defendant.

**WHEREFORE**, Plaintiff prays unto the court for the following relief:

A. That this Court order Defendant to comply with the terms of the insurance contract between the parties;

B. That this Court order Defendant to provide Plaintiff access to all documentation required

to perform their audits;

C.      That this Court award Judgment in favor of Plaintiff against Defendant in an amount in excess of $75,000.00;

D.      That such judgment in favor of Plaintiff against Defendant bear such interest as provided by law;

E.      That the costs of this action be taxed against Defendant, including attorney's fees; and

F.      That Plaintiff have such other and further relief as the Court deems just and proper.

January 4, 2024.

s/Russell M. Racine
Russell Racine
NC Bar No.: 33593
Taylor J. Sweet
NC Bar No.: 55101
CRANFILL SUMNER LLP
Post Office Box 30787
Charlotte, NC 28230
Telephone: (704) 940-3418
Facsimile: (704) 831-5501
rracine@cshlaw.com
tsweet@cshlaw.com
www.cshlaw.com
*Attorneys for Plaintiff*