# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL ACTION NO. 3:24-CV-00006-KDB-SCR

| | |
|---|---|
| **LM INSURANCE CORPORATION,**<br><br>**Plaintiff,**<br><br>**v.**<br><br>**DAVID SIMONINI CUSTOM HOMES, INC., ET AL.,**<br><br><br>**Defendants.** | **ORDER** |

**THIS MATTER** is before the Court on Plaintiff's Motion for Default Judgment (Doc. No. 15). The Court has carefully considered this motion, Plaintiff's filings in support and the relevant record. Because the Court is not satisfied that 1) Defendants have been properly served; 2) Plaintiff has alleged sufficient facts to hold any specific Defendant liable or 3) alleged facts to hold the individual Defendant David Simonini liable under the theory of "piercing the corporate veil," the Court will exercise its discretion to **DENY** the motion.

## I.    LEGAL STANDARD

Federal Rule of Civil Procedure 55(b) "authorizes the entry of a default judgment when a Defendant fails 'to plead or otherwise defend' in accordance with the Rules." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982); *Citadel Brands LLC v. Teespring, Inc.*, No. 3:23-CV-00586-KDB-SCR, 2024 WL 3240683, at *1 (W.D.N.C. June 28, 2024). When a defendant defaults, he admits the complaint's well-pleaded allegations of facts. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001). That said, "[t]he defendant is not held ... to admit

1

conclusions of law," as "a default is not treated as an absolute confession by the defendant of his liability and of the plaintiff's right to recover." *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). To determine whether to enter judgment on a defendant's default, the court examines whether the well-pleaded allegations in the complaint support the relief sought in the case. *Id.* "There must be a sufficient basis in the pleadings for the judgment entered." *Nishimatsu*, 515 F.2d at 1206. Indeed, default judgments are generally disfavored in the Fourth Circuit. *See Tazco, Inc. v. Dir., OWCP*, 895 F.2d 949, 950 (4th Cir. 1990); *Shipp v. Goldade*, No. 519CV00085KDBDCK, 2019 WL 13225873, at *1 (W.D.N.C. Sept. 9, 2019). Ultimately, "[e]ntry of default judgment is left to the discretion of the court." *U.S. Lumber Grp., LLC v. Shed Co., LLC*, No. 5:24-CV-00200-KDB-SCR, 2025 WL 798097, at *1 (W.D.N.C. Feb. 3, 2025) (quoting *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005).

Further, before entering a default judgment against a defendant, a court must assure itself that the defendant has been properly served. *See Armco, Inc. v. Penrod-Stauffer Bldg. Sys., Inc.*, 733 F.2d 1087, 1089 (4th Cir. 1984) (vacating a default judgment where service of process was insufficient). "A court does not have personal jurisdiction over a defendant who has not been properly served and therefore has no power to enter a default judgment." *Douglas v. Univ. Place Nursing & Rehab. Ctr.*, No. 317CV00303FDWDCK, 2019 WL 1246205, at *1 (W.D.N.C. Mar. 18, 2019).

If the court determines that liability and jurisdiction have been established, the court must then determine damages. *J & J Sports Prods., Inc. v. Romenski*, 845 F. Supp. 2d 703, 706 (W.D.N.C. 2012). Unlike allegations involving liability, allegations about damages are not treated as admitted by a defendant's default. "The court must make an independent determination

2

regarding damages." *Romenski*, 845 F. Supp. 2d at 706. In determining damages, the court may conduct an evidentiary hearing or rely on affidavits or documentary evidence in the record. *Id.*

## II.    FACTS AND PROCEDURAL HISTORY

Plaintiff LM Insurance Corporation ("LM") is an insurance carrier that provided worker's compensation insurance coverage to David Simonini Custom Home, Inc. a residential home builder, under the North Carolina Workers' Compensation Insurance Plan ("NC Plan"). Doc. No. 5 at 6. In applying for insurance through the NC Plan, "David Simonini Custom Home" listed its President and 100% owner as David Simonini. *Id*. It is formally incorporated as Defendant David Simonini Custom Homes, Inc. *See* North Carolina Secretary of State, https://www.sosnc.gov/online_services/search/Business_Registration_Results (June 10, 2025).

In this action, Plaintiff claims that "Defendants" (which (without explanation) numbered 16 different entities and one individual, David Simonini, in the Amended Complaint but is now down to three entities and Mr. Simonini) have not fully paid for the workers' compensation insurance coverage that LM provided to David Simonini Custom Home, Inc. from February 2021 to May 2022. Based on "audits" of the company records and information from "Defendant's" bank statements,[1] Plaintiff's "Forensic Consultant" (who is one of LM's employees and has been employed with LM since 2014) calculates that "Defendants" owe more than $525,000 in "additional" insurance premiums that remain unpaid. *See* Doc. No. 15-1.

LM filed its Amended Complaint on February 23, 2024. Doc. No. 5. On July 10, 2024, all Defendants were allegedly served with the Summons and Complaint by publication. *See* Doc. No. 12. No further evidence of service appears in the record. To date, all Defendants have failed to

---

[1] As noted above, there remain four Defendants in this action (three entities and one individual). It is unclear which of the Defendants' bank records are being referenced in Plaintiff's damages affidavit.

3

plead or otherwise respond to Plaintiff's claims. On August 30, 2024, the Court granted an Entry of Default against the Defendants. *See* Doc. No. 14. Nine months later, on May 30, 2025, Plaintiff filed the pending Motion for Default Judgment. There has been no response, and it is ripe for the Court's ruling.

## III.    DISCUSSION

### A.    Service by Publication

Absent waiver of service of process or consent, the failure to obtain proper service of process – even if the defendant gains actual notice – deprives the court of personal jurisdiction over a defendant. *See, e.g., Koehler v. Dodwell*, 152 F.3d 304, 306 (4th Cir. 1998); *FDIC v. Schaffer*, 731 F.2d 1134, 1135–36 (4th Cir. 1984); *Thomas & Howard Co. v. Trimark Catastrophe Servs.*, 564 S.E.2d 569, 572 (2002) ("While a defective service of process may give the defending party sufficient and actual notice of the proceedings, such actual notice does not give the court jurisdiction over the party."). Therefore, the threshold issue for the Court is whether Plaintiff has properly served the Defendants. If not, then the Court lacks personal jurisdiction and the motion must be denied.[2]

Plaintiff asserts that it has properly served all the Defendants by "publication;" that is, by publishing a legal notice rather than personally serving the Defendants. Doc. No. 16 at 1; Doc. No. 12. Unlike personal service (in its various forms), there is no specific provision for service by publication in the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 4. However, Federal Rule of Civil Procedure 4(e) states that service may be had by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Thus, state law, by reference, may

---

[2] Of course, obtaining proper service is a prerequisite for the action to proceed in any manner.

permit "service by publication" of a federal action in those limited circumstances authorized in the forum state. Still, service by publication is a disfavored measure and should only be used as a means of last resort. 4B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure Civ. § 1115 (3d ed.2013).

Under North Carolina law, service by publication is governed by Rule 4(j1) of the North Carolina Rules of Civil Procedure. *Builders Mut. Ins. Co. v. Neibel*, 293 N.C. App. 1, 5–6, *aff'd*, 386 N.C. 666 (2024). "Rule 4(j1) permits service by publication on a party that cannot, through due diligence, otherwise be served." *Id*. (quoting *Cotton v. Jones*, 160 N.C. App. 701, 703 (2003)). However, it is well established in North Carolina that "[s]ervice of process by publication is in derogation of the common law." *Id*. Therefore, statutes authorizing service of process by publication are strictly construed, both as grants of authority and in determining whether service has been made in conformity with the statute. *Id.*

> Rule 4(j1) of the North Carolina Rules of Civil Procedure provides in relevant part:
>
> A party that cannot with due diligence be served by personal delivery, registered or certified mail, or by a designated delivery service authorized pursuant to 26 U.S.C. § 7502(f)(2) may be served by publication. Except in actions involving jurisdiction in rem or quasi in rem as provided in section (k), service of process by publication shall consist of publishing a notice of service of process by publication once a week for three successive weeks in a newspaper that is qualified for legal advertising in accordance with G.S. 1-597 and G.S. 1-598 and circulated in the area where the party to be served is believed by the serving party to be located, or if there is no reliable information concerning the location of the party then in a newspaper circulated in the county where the action is pending.

N.C. Gen. Stat. § 1A-1, Rule 4(j1) (2023).

"Due diligence dictates that plaintiff use all resources reasonably available [] in attempting to locate defendants. Where the information required for proper service of process is within plaintiff's knowledge or, with due diligence, can be ascertained, service of process by publication is not proper." *Builders Mut.*, 293 N.C. App. at 6. (citations omitted). Yet, there is no "restrictive

mandatory checklist"; rather, a case-by-case analysis is appropriate to determine what constitutes due diligence for purposes of service of process by publication. *Id*. Here, Plaintiff's counsel offers as due diligence that he "check[ed] the records of online search programs, attempted service of process by certified mail at multiple addresses, and attempted service by process server" prior to service by publication. No details are provided. He also states that on July 16, 2024, David Simonini called counsel and stated that he had received the service packet (although actual notice is, as noted above, not a sufficient substitute for proper service).

While the Court understands that not all service is easily accomplished and that some defendants may actively seek to evade service (which is not alleged here), the Court in the exercise of its discretion is unwilling to enter a default judgment based on the summary allegations presented. Mr. Simonini is a well-known residential home builder in the Charlotte area, who, according to easily located publicly available information on the internet, appears to still be operating several businesses. *See, e.g.*, https://www.davidsimonini.com/ (last accessed June 10, 2025). Therefore, in the absence of specific evidence to the contrary, it is the Court's belief that he (and any company of which he is an officer) can be personally served with due diligence. Accordingly, the Court finds that personal jurisdiction over the Defendants has not yet been established, and no default judgment can properly be entered.

### B. Sufficiency of Allegations to Support Default Judgment

Further, even if personal jurisdiction had been obtained over the Defendants, the summary allegations of the Amended Complaint do not support the Defendants' joint and several liability for the full amount of the default judgment sought by LM. That is, in terms of the relevant test, the well-pleaded allegations in the complaint do not support the relief sought. LM alleges that it provided insurance coverage to a single entity, David Simonini Custom Home, Inc. Doc. No. 5 at

6. LM further alleges that such an entity does not exist (despite the obvious evidence of a corporation named David Simonini Custom Homes, Inc., which Plaintiff has made a named Defendant). Nevertheless, LM seeks joint and several recovery of all its alleged damages from three different entities, and the affidavit which purports to calculate the amount of this joint liability references only the bank statements of a single unnamed "Defendant." Again, while further proceedings may (or may not) refine these alleged facts to establish the liability of one or more of the Defendants, the record as it currently stands does not provide a sufficient basis to award a default judgment to Plaintiff against any specific Defendant (even if it has generally plead that it has not been fully paid for its past insurance coverage).

Finally, even if it had alleged enough facts to hold a particular corporate Defendant liable, LM has not – for the purposes of entry of a default judgment – presented sufficient allegations to "pierce the corporate veil" and hold David Simonini liable as an individual for the failure of any corporate insured to pay its premiums.

"[A] corporate entity is liable for the acts of a separate, related entity only under *extraordinary circumstances,* commonly referred to as 'piercing the corporate veil.'" *United States v. Cochran*, 79 F. Supp. 3d 578, 584–85 (E.D.N.C. 2015) (quoting *Vitol, S.A. v. Primerose Shipping Co.,* 708 F.3d 527, 544 (4th Cir. 2013) (emphasis in cited quotation). "This power to pierce the corporate veil ... is to be exercised reluctantly and cautiously." *DeWitt Truck Brokers, Inc. v. W. Ray Flemming Fruit Co.,* 540 F.2d 681, 683 (4th Cir. 1976). The party seeking this equitable relief bears the burden of proof, and several factors guide the determination of whether one entity or individual constitutes the alter ego of another, including gross undercapitalization, insolvency, siphoning of funds, failure to observe corporate formalities and maintain proper

7

corporate records, non-functioning of officers, control by a dominant stockholder, and injustice or fundamental unfairness. *Vitol,* 708 F.3d at 544 (quotations omitted).

Thus, in North Carolina "the general rule is that in the ordinary course of business, a corporation is treated as distinct from its shareholders." *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 362 N.C. 431, 438, 666 S.E.2d 107, 112 (2008) (citation omitted). However, "exceptions to the general rule of corporate insularity may be made when applying the corporate fiction would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim. Those who are responsible for the existence of the corporation are, in those situations, prevented from using its separate existence to accomplish an unconscionable result." *S. Shores Realty Servs., Inc. v. Miller*, 251 N.C. App. 571, 583–85 (2017).

The sum and substance of Plaintiff's allegations offered to support "piercing the corporate veil" are that "Defendant David Simonini acts through one or more of the named defendant entities to construct homes, that he applied for workers compensation insurance for these entities, and listed himself both as president of 'David Simonini Custom Home' and having 100% ownership in David Simonini Custom Home." Doc. No. 16 at 6 (citing Doc. No. 5 at ¶¶ 30-33). Even taken together with Plaintiff's allegation of "breach of contract" (i.e., the corporations have not fully paid their bills) these broad allegations are insufficient to support ignoring the corporate form. Again, this is a narrow doctrine. Individuals who form corporations as the sole owner and then do business (including the purchase of insurance) through that corporation are not, as Plaintiff would have the Court hold, liable in all circumstances for payment of the corporation's unpaid expenses. Rather, additional specific allegations of corporate misfeasance and fundamental unfairness are required as described above. Because these further allegations are absent here, the Court cannot

"pierce the corporate veil" and enter default judgment against David Simonini for the alleged debts of any corporate insured.

## IV.    ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

Plaintiff's Motion for Default Judgment (Doc. No. 15) is **DENIED.**

**SO ORDERED ADJUDGED AND DECREED**.

Signed: June 11, 2025

Kenneth D. Bell
United States District Judge